IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GHEORGHE GUSIN                :        CIVIL ACTION
                              :
     v.                       :
                              :
ANTHONY MARK BIANCHI, et al.  :        NO. 14-7298

MEMORANDUM

Bartle, J.                                    August 18, 2015

      Before the court is the motion of plaintiff Gheorghe Gusin for reconsideration of the court's April 24, 2015 Order staying the claim against defendant Marguerite R. Bianchi for fraudulent transfer.

      In August 2007, defendant Anthony Mark Bianchi ("Anthony Bianchi") was found guilty by a jury of violating 18 U.S.C. §§ 2422 and 2423 by traveling overseas to engage in sex with underage individuals. He was sentenced in June 2009 to a term of imprisonment of 300 months. (Doc. # 285, United States v. Bianchi, No. 06-19, E.D. Pa. June 2, 2009). Plaintiff Gheorghe Gusin ("Gusin") purports to have been one of his victims.

      Gusin has filed suit against Anthony Bianchi, seeking damages pursuant to 18 U.S.C. § 2255.[1] He also alleges that

---

1. 18 U.S.C. § 2255(a) provides in pertinent part that "[a]ny person who, while a minor, was a victim of a violation of section . . . 2422[] or 2423 of this title and who suffers

Anthony Bianchi engaged in fraudulent transfers of assets to his mother, Marguerite Bianchi, who is also a defendant in this matter, in violation of the New Jersey Uniform Fraudulent Transfers Act ("NJUFTA"), N.J. Stat. Ann. § 25:2-20 et seq., and the Pennsylvania Uniform Fraudulent Transfers Act ("PUFTA"), 12 Pa. Cons. Stat. Ann. § 5101 et seq.  Gusin pleads his § 2255 claim against Anthony Bianchi alone, while his fraudulent transfer claims are pleaded against both Anthony Bianchi and Marguerite Bianchi.

      During a status conference on April 24, 2015, counsel for defendant Marguerite Bianchi requested that the action against her be stayed pending resolution of the § 2255 claim against Anthony Bianchi.  We entered an order (Doc. # 16) that same day staying the action against Marguerite Bianchi.

      On July 8, 2015, during a telephone conference, plaintiff's counsel requested and was granted permission to file a motion for reconsideration of the April 24, 2015 order.  That motion is now before the court.

      To succeed on a motion for reconsideration, a party must show at least one of the following:  "(1) an intervening change in

---

personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains and the cost of the suit."

the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." <u>Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros</u>, 176 F.3d 669, 677 (3d Cir. 1999).  Gusin does not cite <u>Max's Seafood Cafe</u> or any other controlling standard.  However, he appears to urge reconsideration on the third ground.

Gusin urges that there is no reason for a stay of the fraudulent transfer claims against Anthony Bianchi and his mother since "[a] judgment in hand is not a legal prerequisite for prosecuting a fraudulent transfers claim."  In support of his position, he directs us to the plain language of the PUFTA and the NJUFTA.  Each provides that "a creditor . . . may obtain" certain relief against a transfer which is fraudulent pursuant to the statute.  N.J. Stat. Ann. § 25:2-29; 12 Pa. Cons. Stat. Ann. § 5107(a).  "Creditor" is defined by both statutes as a "person who has a claim."  N.J. Stat. Ann. § 25:2-21; 12 Pa. Cons. Stat. Ann. § 5101(b).  "Claim," in turn, is defined by the statutes to mean a "right to payment, <u>whether or not the right is reduced to judgment</u>, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." N.J. Stat. Ann. § 25:2-21; 12 Pa. Cons. Stat. Ann. § 5101(b) (emphasis added).  Gusin maintains that a fraudulent transfer action may proceed in tandem with the underlying claim or claims.

-3-

Gusin's position is consistent with New Jersey and Pennsylvania authority.  Courts in those jurisdictions have permitted fraudulent transfer claims to proceed alongside the claims that give rise to the purported right to payment.  See, e.g., Gilvey v. Creative Dimensions in Educ., Inc., No. L-11-09, 2012 WL 3656332, at *2-*3 (N.J. Super. Ct. App. Div. Aug. 28, 2012); Stabile v. Benson, No. L-484-05, 2011 WL 4483580, at *5 (N.J. Super. Ct. App. Div. Sept. 29, 2011); see also Protocomm Corp. v. Novell, Inc., 171 F. Supp. 2d 459, 464 (E.D. Pa. 2001); Stauffer v. Stauffer, 351 A.2d 236, 245 (Pa. 1976).  These cases make clear that the fraudulent transfer statutes do not "prevent a present or future 'creditor' from seeking a remedy prior to judgment."  Stabile, No. L-484-05, 2011 WL 4483580, at *5 (quoting Intili v. DiGiorgio, 693 A.2d 573, 576-77 (N.J. Super. Ct. Ch. Div. 1997)); see also Protocomm Corp., 171 F. Supp. 2d at 464 (citing Stauffer, 351 A.2d at 245)).

Courts in states with fraudulent transfer statutes akin to the NJUFTA and the PUFTA have reached similar conclusions.  In Florida, for example, where the fraudulent transfer law is identical in all relevant respects to the NJUFTA and the PUFTA, the state Supreme Court approved the denial of a defendant's request to stay a fraudulent transfer action pending the resolution of the underlying claim.  Friedman v. Heart Inst. of Port Lucie, Inc., 863 So.2d 189, 195 (Fla. 2003).  Responding to the assertion that a stay was the only way to address the risk of unduly invasive discovery, the court

-4-

noted that these concerns were "more properly addressed not by automatically staying the actions, but by other means and the placement of discretionary limitations upon discovery by trial courts." Id. at 194.

In their joint brief in response to Gusin's motion, defendants first note that the court retains broad discretion to stay proceedings in order to promote the "fair and efficient adjudication" of the matters before it.  See United States v. Breyer, 41 F.3d 884, 893 (3d Cir. 1994) (citing Gold v. Johns-Manville Sales Corp., 723 F.2d 1068, 1077 (3d Cir. 1983)); see also Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am., AFL-CIO, 544 F.2d 1207, 1215 (3d Cir. 1976).  They ask us to exercise this sound discretion in order to limit potentially unnecessary discovery against Marguerite Bianchi.

Further, defendants attempt to distinguish the cases upon which Gusin relies on the ground that the transfers at issue here involved only real estate, while those fraudulent transfer actions sought to prevent the liquidation of assets.  Anthony Bianchi, they note, has no assets as he expended all of his resources to finance his legal defense.  Defendants also state that "[i]n this situation the transfers occurred over eight (8) years prior to the claim currently presented and would be outside the look back period of four (4) years."  The fraudulent transfer statutes are therefore inapplicable, defendants maintain, because "this claim would have

been extinguished as early as the year 2010." It appears to be defendants' position that because Anthony Bianchi lacks any assets and because the transfers fall outside the "look back period," the stay of the fraudulent transfer actions should remain in effect.

Defendants' arguments are unpersuasive. We see no reason why the nature of the assets transferred should compel a conclusion different from the ones reached by the New Jersey and Pennsylvania courts.

Moreover, defendants' assertions that the claims fall outside of any "look back period" and that Anthony Bianchi lacks assets do not support a stay. In relying on the existence of a four-year "look back period," defendants appear to be alluding to but do not specifically address the statutes of limitation set forth in the NJUFTA and the PUFTA. See N.J. Stat. Ann. § 25:2-31; 12 Pa. Cons. Stat. Ann. § 5109. This issue will have to await discovery or the filing of any appropriate motion. It is not a basis for continuing the stay.

Finally, although defendants are correct that we have broad discretion to stay actions before us, we must "weigh competing interests and maintain an even balance" when doing so. Landis v. N. Am. Co., 299 U.S. 248, 255 (1936); Bechtel Corp., 544 F.2d at 1215. Here, although Marguerite Bianchi has an interest in avoiding burdensome discovery, Gusin has an interest in the "just, speedy, and inexpensive determination" of his claims. See Fed. R. Civ. P.

1.  To the extent that defendants are concerned about excessive discovery against Marguerite Bianchi, the parties and the court have other means to deal with any such issues.[2]  See Friedman, 863 So.2d at 194.  In light of these factors and the authority cited by Gusin, we conclude that reconsideration of the April 24 Order is warranted.

Defendants further urge that Gusin's motion must fail because he has not addressed the Third Circuit's standard for reconsideration in his supporting brief.  See Max's Seafood Cafe ex rel. Lou-Ann, Inc., 176 F.3d at 677.  However, even though Gusin has not described the applicable standard, he has clearly demonstrated a "need to . . . prevent manifest injustice."  See id.

Accordingly, we will grant his motion for reconsideration and vacate the April 24 Order.

---

2.  Indeed, Gusin has limited the discovery against Marguerite Bianchi by conceding that her "personal finances . . . should not be discoverable" and that any information regarding "punitive damages should not be discoverable until the Court's determination that punitive damages are warranted."